Because Dustin Saunders made a secret promise to a government-mandated HVAC subcontractor in a July 13, 2000 email that was copied to Don Deyo, the author of the SBA 8A Evaluation Report, and Don Deyo kept secret the existence of the July 13, 2000 email. There's nothing in this record to establish that Don Deyo, or certainly not Mr. Saunders, was the government employee that entered into the contract. No, definitely the contract was entered into by the contracting officer, Copic. Well, doesn't that make a difference? If you're talking about superior knowledge, doesn't that superior knowledge have to be with someone who's a player with respect to the contract? How is Don Deyo not a player? How is he not a player? Let's focus on Don Deyo. Don Deyo is the person who receives the July 13 email. He claims to be a so-called Title II employee. He claims to be the project manager for West Point. He's the person who writes the evaluation for the SBA 8A set-aside, because this is what this is. This is an 8A contract. How is he not a player? How is he allowed, under 5.101 of the FAR, to sit silent about that The government has carefully disavowed all involvement of Dustin Sanders, the pistol coach at West Point. And let's, for purposes of the initial argument, set him aside. But how does Don Deyo remain silent? Did he know that Gleason was submitting a proposal that was based on the modified design? You know, he's probably the only person who knows. The Gleason proposal contains some general language that says, you know, we might make a minor modification here if circumstances require. But Deyo knows, in fact, they're bidding on a proprietary system. He's the only one who knows. And he sits there and he says nothing? If you let the lower court decision stand, here's what happens. We can now have secret communications with government-mandated subcontractors. Because this isn't a subcontractor that P&K picks. This is a subcontractor the government picks. They pick two. They said you have to show a contract with one of the two of them. They pick them. They have their little secret communications. They make a promise to this subcontractor. They don't tell P&K or any of the other bidders. And by the way, I would argue that the quality of the government's production of documents in this case raises a real question in my mind as to what the original contracting officer, Ann Marie Kopeck, is retired. The contracting officer that we have now claims not to know. But the government didn't produce a complete email package. They produced just this email. That's not an issue for us. No, I understand. But I'm saying that if you argue the inferences, which we have argued, we're entitled to the inferences. But how does the government sit there and say, we got the secret email. The guy who wrote the 8A report knows about it. And we don't have to accept any knowledge of it? It's OK? I don't remember. Was there something in the contract or in the solicitation that said, in effect, you deal with Ms. Conklin. You don't deal with anybody else. Nobody else has authority here to... So what? We're not dealing with anyone but her. We're not dealing with anyone but her. So that the solicitation and she have sole authority to change any of the terms. We don't argue that the case is about changing the spec. That's the government's straw man. That is not our position. We've never argued that the government's spec is changed by Dustin Saunders' activities or by Don Deo's silence. We argue very simply, the government is stopped to deny that they interfered with the bidding process. We don't maintain they changed it. We maintain they interfered with the bidding process. Did the government ever see the Gleason proposal? The government saw... Yes, the government had the Gleason proposal as part of the 8A. It was part of the investigation of the 8A, which Don Deo did. So if Don Deo did the investigation of the 8A, if he reads the precatory language, he's the person who has the email. Tell me how he doesn't have a duty to say, hey guys, I think we'd better investigate this. We'd better ask some questions. He's the only one who knows what it means. What's a contractor, an 8A contractor with a mandated subcontractor going to do? He's going to argue with the subcontractor? That's a subcontractor the government picked. Well, the government had two subcontractors. We don't know anything about the other, but why... I'm still unclear on why your client haven't been given this proposal with this suggests there might be a problem or a question here. Didn't have the requirement of exercising due diligence. Well, he did. The contractor looked at what was excluded. He went and made a subcontract with another contractor to fill in the hole, but he doesn't know that it's for a proprietary system. Gleason and Elfring doesn't say... They say we excluded the following things. They say, well, we reserved the right to make some adjustments. They don't say we're bidding a proprietary system. The person who knows that is Dondeo. We don't know that. But you do know that they told you that this proposal does not necessarily meet plans and specifications. Right, but what can we do? We don't have a choice. Who else do we go to? We only have the choices the government gave us. Well, first, we would establish there is another person in this, though, but you... I mean, if you want to argue about that, I... And we never saw any emails from them. They weren't the successful bidder. They weren't the lower bidder. But the government knew that Gleason and Elfring... In fact, the government source selection report, which is in the record, says everybody bid with Gleason and Elfring. What are we supposed to do? The government had no business not disclosing the existence of that email. How does Dondeo sit there? He knows there's a gathering storm. He knows what he's done. He's the only one who understands, if we believe that he didn't tell anybody. And for the moment, let's assume he didn't. How is the government not stopped? How does Dondeo's failure to tell somebody that he has this email not an estoppel against the government? How does the government sit there with the person writing the 8A report and say, oh, it's not our problem? Because that's what you've now said. You said, okay, we can mandate a subcontractor. We can send all these emails. We can create all of this chaos. And, oh, as long as we don't tell the contracting officers, okay. I don't think that's okay. That's not what 5.101 of the FAR says. 5.101 of the FAR specifies how you issue solicitations and what you say. This email is not consistent with 5.101. Doesn't that, though, suggest it's a nullity until it's put into a form that comes from an authorized government contractor? But what do you do about the fact that the subcontractor is selected by the government and the communication is with the subcontractor? Think about what you're saying. And I listened to the earlier argument, so let me put this in the context of a private contract. In the world of private contracting, this is called fraud and inducement. One of the things that distinguishes the government in its contracting is that there are very tight rules about dealing with the government because the government is a, you have to let me finish, you really do, is a sprawling place in which people will engage with each other so it will and do say all kinds of things. And if you're going to enter into a contract and hold the government legally responsible, there's a set of pretty tight requirements, including extremely tight standards for equitable estoppel requiring authority of the one who makes the relied on misleading representation. And that, I think, is at the core of the problem. The only person with authority says, what we want is this STV system. You tell us what we have to pay you to put that in. We've got no interest in anything else anymore. Somebody else talks to you, it's not my business until somebody comes and makes me change the contract. This I understand, Your Honor, but the problem is that we have a mandated subcontractor. We have a secret e-mail and P&K has no way to protect itself. The government on an 8A has a responsibility to investigate and to ensure that it does not allow the contractor to walk into a trap. And that's exactly what they did here. Why could P&K not have gone to Ms. Conklin and say, or even before they made their submission, their proposal saying, I read the solicitation, it says use STV system. I've been told maybe I don't have to. They weren't told. All they have is a bid. They get the bid the day of the submission date. That's all they have. That's a fact the trial court assumed. It's not a fact in the record. I'm running into my rebuttal time and I would like to reserve some time. Thank you. Good morning and may it please the Court. I think that Your Honors have really understood the central issues at the heart of this case, which is authority. Mr. Saunders and Norm and the promise or statements that were contained in Mr. Saunders' email. You can appreciate why to at least a lay person or any kind of normal person it would sound a little sinister under the wraps to have one government official who's a participant in the whole process not have a requirement of disclosure, right? You understand how that might offend one's sensibilities in terms of how the process often works. Well, first, there's no evidence in the record that Mr. Saunders, I'm sorry, that Mr. Dayo, we will presume that he received the email. He was copied on it. He had no recollection of the email. He had, there's no evidence that he actually opened it or read it. Yeah, but the government's position is it doesn't matter, right? And that's correct and it does not matter, Your Honor. Mr. Dayo didn't have the authority and the contract, the solicitation itself, is very specific and I would direct the Court's report of the record and it says the contracting officer's representative is not authorized to issue change orders, contract supplements, or direct any contract performance requiring contractual modification or adjustment. And the key here, changes in the scope of work or any increase or decrease in the scope of work shall be made only by the contracting officer by a properly executed modification. It also incorporated the identical provision from the DFAR in that and that's at A473. And under this Court's precedent in winter, that's the end of it. No one else had authority here. There cannot be implied authority and even if we were to accept the idea that it was offensive that Mr. Dayo didn't, you know, share this information with other potential bidders, that still doesn't matter in the context of government contracting. No one with authority. What was, can you just describe, what was Mr. Dayo's role in this whole process? He was the initial project engineer and so he was the project manager and he's very clear in his deposition testimony that he didn't, and in his declaration, that he didn't have any direct involvement with the contracting office and he had no authority to issue any modifications to the contract. And I would also point out that in the e-mail itself, and this is at A48, at the bottom, the last paragraph of the e-mail, it says, I will, and this is from Mr. Saunders, I will handle all aspects of negotiating the contract for the targeting system, which is totally separate from the rest of the work on the redesign and the HVAC. Any questions you have concerning the ventilation system should be directed to Denise Conklin. And he provides her telephone number. She works in the Directorate of Contracting here at West Point. So the e-mail itself, a document that is at the heart of this case, is clearly stating if you have questions about anything, you've got to talk to them. You don't have to talk to Mr. Dio. You don't talk to me. You talk to the Directorate of Contracting. For the same reason that no Mr. Dio nor Mr. Saunders had any authority here, and there can be no implied authority under winter, there can be no ratification of the e-mail and its contents can't be imputed to the contracting officer or to anyone else who had authority. The record is very clear. At all times, the contracting office just stuck with its one requirement that you adhere to the specifications called for under the contract, and that was to use the STV design. Similarly, there can't be a superior knowledge or equitable estoppel claim for the primary reason that they haven't established authority, and that's exactly what the trial court held. Another point that we would like to make here is, and you were discussing this earlier, that the P&K was given express notification in its proposal from Gleason that it didn't meet the plans or specifications called for under the contract, and at page A493, Gleason states specifically, this proposal does not necessarily meet plans and specifications. Gleason and Elfering has redesigned the ventilation system and corrected the previous design deficiencies. So all they had to do was inquire about that, and I would just make a note about the timing. She's saying they didn't have any time here to do this because they received Gleason's proposal on the same day that the contract was due, and he simply took their cost numbers and put it into his bid to West Point. They had plenty of time prior to that to contact Casewell or Gleason and figure out, go over the terms of their specifications, go over how they were going to do the work, and meet their obligations, their duty as a contractor to inquire prior to making their offer. You're saying even though they, as a practical matter, really didn't have much time once they got this from Gleason, just a practical matter, it was still incumbent upon them to assure that this was all done. Yes, that is correct. And because of this disclaimer, their superior knowledge claim and equitable estoppel claim has to fail, and the trial court correctly held that they couldn't meet it as a matter of law. In not reading Gleason's proposal, their actions simply weren't reasonable, and their conduct as a contractor, government contractor, wasn't reasonable. And as a final point on equitable estoppel, I would just point out they have not established any misconduct by anyone with authority under the contract, as I believe Judge Toronto was asking earlier. And you just don't think that Don Dio's oversight managerial role in this project ties him closely enough to the contracting authority that when he supposedly knew this and didn't speak up, that that's a basis for a kind of estoppel, or at least a superior knowledge? No, Your Honor, because in order to have a claim for estoppel, you have to have someone whose actions were at issue, had the authority, or their actions, their unauthorized actions were subsequently ratified. You simply don't have that here. And as this court's holding in Winter points out, because we had this provision in the contract expressly disclaiming anyone other than the contracting officer from having authority, there's no conceivable way, no matter what Mr. Dio was doing, that he would be in a position where the government could be estopped. And I think that that actually goes back to the Supreme Court's holding in OPM v. Richmond, as well as the classic case of Merrill, that conduct by government officials, in order to have an estoppel, conduct by government officials have to be acting within the scope of their authority, and it's simply not present in this case. And finally, with respect to their mutual mistake claim, the trial court correctly held that this was a unilateral mistake for the very same reasons. First, no one with authority, they can't establish anyone acted with authority. And finally, the principal reason is that they had this disclaimer. It was right there in capital letters. They failed to read it. They failed to exercise due diligence, making this a unilateral mistake in bidding. What's the way of explaining, if you can, why it's not mutual mistake on the assumption, maybe you want to contest it, that the government thought that the price it was given was, in fact, based on the bidder's, the NK's, estimate of its expected costs to do what the solicitation required it to do, the STV system? STV, yes, Your Honor. So if the government thought that that's what it was getting, the it being the price for installing that, why is that not a mistake on the government's part? Because the government did receive, it wasn't a mistake on the government's part, the government did receive that price. It didn't pay more to PNK to have them install leasons design. You don't think that the government, when it took that bid, believed that that was a bid based on a cost estimate for the STV system? Yes, the government certainly did believe that it was a cost estimate for the STV system. And that turned out to be mistaken? The mistake was on PNK's part. To the extent that PNK had that assumption that proved that was wrong, the burden was on them to investigate their subcontractor and to go over. And, you know, Gleason's proposal was only three pages. Certainly they could have taken half an hour and reviewed it and had a red flag that went up when they said, this doesn't meet their plans and specifications, and called them up and said, what are you talking about and how is it affecting your price? They never did that. And the solicitation simply required compliance with the specifications that were called for. And that's all the government ultimately was asking for, stick with the solicitation and the requirement to use the STV design. And that's what they received. Thank you. Thank you. Picking up on the issue of mutual mistake, if we accept the government's position that Don Deo said nothing to anyone, they knew what the Gleason proposal was. It was attached. They had it. They knew as well as we did. And in the case of Don Deo, better than we did. Because they knew about the email and we didn't. What about your duty to vet your subcontractor proposals? How do you vet? Let me finish. And don't you have an obligation to follow through and ensure if you have any additional questions on any of the, especially in a situation where you change these subcontractors, you went with the third and not the two that were suggested by the government? What's your duty? We went with Caswell. If you read the source selection report, there will be more trees killed on this issue. Caswell was the authorized, I mean, Gleason and Elfring was the authorized representative of Caswell. That the government established to its satisfaction and in fact said in its source solicitation board report, which is in the record. Not something the government argued that Gleason and Elfring was some third entity. It's not. It's the authorized representative of Caswell. You want to do a deal with Caswell at West Point, you do it, I mean, you must do it with Gleason and Elfring. They don't actually install. They just furnish. So we didn't go with a third person. We went with Caswell. And in fact, the source selection board says, we proved the relationship with the Caswell sub. And remember what the solicitation actually says. The contractor shall subcontract the HVAC system with Range Tech or Caswell and shall submit proof of this relationship with its offer. We got the contract. We clearly met that requirement. That was never disputed and in fact is affirmatively stated in the source selection report. So we didn't go with a third party. P&K, to pick up on another point that was made by Judge Taranto, it didn't deviate from its obligations under the government contract. It followed the rules. It's the government that didn't follow the rules. If you want to talk about who followed the rules, it's P&K. The government picked Range Tech or Caswell. The government is party to an email that says, the general contractor will be required to use either Caswell Detroit Armor or Range Tech for the ventilation system portion of the government contract. If you feel your own system, not the one designed by STV, is superior and or cheaper, a modification to the contract will be made and you may install your proprietary system. That's at A48 in the record. P&K did nothing wrong here. It used the contractor specified by the government in its solicitation. It didn't know about the email. Only the government knows about the email. You can argue about Don Deo's status, but the fact is, if they trusted him to write the report for the source selection board, he's got to be somebody and he knew about the email, which the government, by the way, concedes in its answer. This is an 8A contract. This is an 8A contract in which the government has an obligation to investigate. And this is an 8A contract in which the government knows exactly what it's told Caswell. Nobody else knows. I mean, I understand that the government's got all kinds of issues, as we heard in the other case, but that's not a license to the government to go out sending its double secret probation emails and making commitments and then having the person who knows about it write the source selection report for the 8A and say, too bad, contractor. And that is exactly what you're saying here. That's what the court below said. It's okay for the government to put out an 8A solicitation, mandate a subcontractor, have double secret probation discussions with that subcontractor, and oops, we don't even have to disclose it in source selection. We don't even have to consider it in source selection. We can just go along blithely. That's this case. We have the argument. Thank both parties. The case is submitted. That concludes the proceedings. Thank you, Judge. All rise.